## McCADDEN v. FAMBRO.

Opinion delivered October 30, 1922.

CONTINUANCE—DISCRETION OF COURT.—Where depositions were taken eight days before trial, and defendant by diligence could have ascertained whether a statement which deponent agreed to forward to the stenographer had been forwarded, the refusal of his motion for continuance till the statement could be procured was not an abuse of discretion.

Appeal from Mississippi Chancery Court, Osceola District; S. R. Simpson, special chancellor; reversed.

J. T. Coston, for appellant.

1. There is no pretense even on the part of Fambro that any consideration passed to plaintiff for the alleged

agreement to reduce the rent. Had appellant made such agreement, it amounted to nothing more than a gratuitous promise, and was not binding. 33 Ark. 574; 55 Ark. 373-374; 164 S. W. 767. But the evidence fails to establish any such agreement.

2. If the plaintiff agreed to accept as rent what other landlords received, without definitely fixing the amount, as is contended by the defendant, such agreement was not only without consideration, and therefore void, but it was too indefinite and uncertain to constitute a contract. 1 Tiffany on Landlord and Tenant, § 173; 109 S. W. 1175; 55 N. Y. Supp. 1074; 5 Daly (N. Y.) 313; 48 N. E. 783; 21 Atl. 37.

*A. F. Barham,* for appellee.

1. The evidence fully sustains the chancellor's finding to the effect that the plaintiff agreed to reduce the rent, and that such agreement was supported by a sufficient consideration.

Appellant was obligated under her contract to keep up all the houses in good repair and make all repairs for the comfort of tenants. This she did not do, nor did she pay appellee for the repairs made by. him. He had the right to treat the contract as rescinded. 88 Ark. 422. And he was entitled to damages for this breach of the contract, and to recoup the same against rents. 96 Ark. 78. The waiver of a legal right is a good consideration. 27 Ark. 407; 31 *Id.* 631. See also 101 Ark. 22; 64 *Id.* 627; 24 Cyc. 914; 164 S. W. 767.

2. The chancellor erred in refusing to permit appellee to complete his proof as to the amount of repairs made upon the land. A lessee is entitled to damages for breach of covenant to make repairs, which he may recoup against rents. 96 Ark. 78.

3. The findings of a chancellor which do not appear to be clearly against the weight of the evidence will not be disturbed. 144 Ark. 50; *Id.* 573 *Id.* 497.

HUMPHREYS, J. Appellant instituted suit by attachment in the circuit court of Mississippi County, Osceola

District, against appellee, William Fambro, to recover on two rent notes executed by him to her for the use of her farm during the years 1920 and 1921. One note was for $1,040, evidencing the balance due on rent for 1920, and the other for $2,360, evidencing the rent due for 1921. The latter note was signed by W. A. Cissna. By agreement the cause was transferred to the chancery court. In that court William Fambro admitted the execution of the notes, pursuant to a rental contract, but claimed that, by mutual agreement and for a good consideration, the rent evidenced by the $2,360 note was reduced to $1,200, and that he was entitled, by way of recoupment, to the sum of $500 on account of repairs which it was the duty of appellant to make.

When the case was called for trial, March 11, 1922, William Fambro moved for a continuance of the cause for several days, to enable him to get a statement from W. A. Cissna's books, which were on Dean's Island, about 35 miles from Osceola, for labor and material furnished to make necessary repairs on the farm. His motion for continuance was supported by his affidavit to the effect that, when W. A. Cissna gave his deposition on the 3rd day of March, 1922, he agreed to forward the statement to the stenographer to be attached to his deposition, but had failed to do so; that W. A. Cissna advised him over the telephone that he had mailed the statement to affiant's attorney, but that same had not arrived at Osceola in time for the trial. Over the objection and exception of said appellee, the court overruled the motion for a continuance.

The cause was submitted to the court upon the issues joined and the testimony of the several witnesses, which resulted in a finding in favor of appellee, William Fambro, upon the reduction of the 1921 rent to $1,200, and in favor of appellant upon the $500 counterclaim, except as to $35 allowed appellee for repairs. A decree was rendered in accordance with the findings against appellee, William Fambro, and W. A. Cissna, his surety,

on the retaining bond, from which all parties appealed as to the findings and decree adverse to each.

The rental contract, omitting caption and signatures, is as follows:

"August 5, 1919.

"This article of agreement by and between Mrs. Susie McCadden of Pecan Point, Ark., and William Fambro, Dean's Island, Ark., witnesseth that:

"Susie McCadden has this day leased to William Fambro her farm of one hundred acres, with the use of all houses, barns, etc., therein, located near Pecan Point, Ark., for three years from January 1, 1920, to January 1, 1923, for $2,360 per year, as evidenced by three promissory notes due and payable as follows: December 1, 1920, $2,360, December 1, 1921, $2360; December 1, 1922, $2,360. Said notes are payable at First National Bank, Memphis, Tennessee.

"Said Fambro is to have full control and use of the entire tract of land, including wood for private use, etc.

"It is further agreed that at the expiration of this lease, if the said William Fambro desires, he is to have the option of renewing lease for period of two years from January 1, 1923. The price per year for the additional time to be the market price of the country for such lands, to be agreed to between the foregoing contracting parties.

"The said Susie McCadden is to keep up all the houses in good order and make all repairs required for the comfort of tenants."

William Fambro paid all the rent in advance for the year 1920, except $1,040, for which amount he executed his note. He cultivated his farm and turned his cotton over to W. A. Cissna, a wealthy man who had supplied him during the year, and who was on his rent note for 1921. He was under the impression that Mr. Cissna had paid the rent note for $1,040 until this suit was brought. Cotton greatly declined in price, however, and after paying for supplies there was nothing left to apply on the rent note. Mr. Cissna refused to

supply Fambro during the year 1921, unless he could get a material reduction on the rent. Fambro made several efforts to get appellant to reduce the rent for 1921, and, according to the testimony introduced by him, succeeded in getting her to say she would do as well by him as other landowners in the community where the farm was located. Mr. Cissna was not willing to make advances on the strength of this statement, so a meeting was arranged between the parties at the store of Perel & Lowenstein in Memphis for the purpose of making more definite arrangements with reference to a reduction of the rent.

The theory of Fambro is that appellant agreed unconditionally at that meeting to reduce the rent for 1921 from $2,360 to $1,200, in order to induce Mr. Cissna to supply him and thereby get her farm cultivated, and to get him (Fambro) to advance money to make repairs.

The theory of Susie McCadden is that she agreed to reduce the rent to $1,200 in case he did not raise more than twenty bales of cotton, on account of boll weevil.

Fambro, Mr. Cissna, Bob Gray, Susie McCadden, and Joseph Perel were present at the meeting in the store, all or a part of the time.

Fambro testified that Susie McCadden unconditionally agreed to reduce the rent to $1,200 in order to get him to advance money to make repairs, and to get Mr. Cissna to make advances to enable him to cultivate the land; that Perel, who was Susie's agent, handed him the following statement written on the back of a card, in evidence of the agreement:

"Due Perel & Lowenstein about.................................$   450
"On $2,340 note ..... ...............................................  1,200
"1920 note ...............................................................  1,040
"Less expenditures balance;"

that he gave the card to Mr. Cissna, who thereafter furnished him supplies and money and material to make repairs; that Wells and Chambers did most of the work in making the repairs; that their labor amounted to

about $35; that he expended about $500 on repairs; that Mr. Cissna advanced it to him and kept a record of the items and amounts; that Mr. Cissna prepared a paper on August 4, 1921, for the owners of land at Pecan Point to sign, showing that the rental value of lands in that community decreased about one-half in 1920, due to the low price of cotton; that he (Fambro) obtained the signature of a number of landowners to it for the purpose of getting appellant to reduce the rent; that she had said she would reduce it to what other landowners were charging, and Mr. Cissna thought that such a paper would induce her to sign an agreement to reduce the rent; that Mr. Cissna said the card he had was not signed by her.

W. A. Cissna testified that the rental value of lands greatly decreased when the price of cotton went down in 1920; that he furnished Fambro in 1920 and was on his note of 1921; that he was unwilling to make advances to him in 1921 unless he could get a material reduction of the rent; that he sent Fambro to see appellant a number of times to get the rent reduced; that he met with them at Perel & Lowenstein's store, in April or May, for that purpose; that she agreed to take what other landowners were getting, and thinks she agreed to take $1,200; that a card was given him which showed that Fambro owed Perel $450 for an automobile, $1,200 rent on the $2,360 note, and $1,040 for the 1920 rent; that he wrote the paper for property owners to sign, stating what rents they were getting for lands, in order to get her to reduce the rent; that he was not satisfied with the card Fambro had given him, because she had not signed it and had not returned the old contract; that he had advanced about $500 to pay for improvements and had kept a record of it; that he would furnish the stenographer with a copy of the items and amounts to be attached as a part of his deposition. This was not done. Bob Gray, who went with Fambro for the purpose of witnessing the contract, stated that Susie agreed to accept $200 a year on the old rent if Fambro did not make

more than forty bales of cotton; that Fambro offered to pay $1,200 rent for 1921, but witnesses did not hear her agree to accept it or to make any reduction of the rent; that he heard nothing said about boll weevil.

Mose Price testified that he went with Fambro to see Susie McCadden early in the spring; that they went to her home; that Fambro told her the farm would not likely be cultivated unless she reduced the rent; that he said nothing about the boll weevil; that she said she would be up there in a few days and would do as well by him as other landlords were doing.

Several other witnesses testified that the boll weevil had not made an appearance at Pecan Point.

Joseph Perel and Susie McCadden testified that Fambro claimed that he would not make more than twenty bales of cotton on account of the boll weevil, and proposed to pay $1,200 for the rent of 1921; that appellant agreed to reduce the rent to that amount if he did not make more than twenty bales; that Perel wrote a card with the understanding that if he raised more than twenty bales he was to pay the rent note in full; that she agreed for him to make some minor repairs and to receive a credit for them on the 1920 rent note. They denied that appellant unconditionally agreed to reduce the rent, or to accept what other landlords were getting, in order to get her land cultivated or money advanced to make repairs. Susie testified that she was willing to credit the rent note with the cost of necessary improvements made by Fambro if he made proof of them; but said she herself made about all the improvements that were necessary. She gave the items and amounts of repairs made by her. Her husband corroborated her statement in regard to repairs made by her. He went in person and made repairs to the amount of about $75. W. S. Stephenson testified that in March, 1921, he heard Perel ask Fambro why he did not pay Susie her rent; that Fambro said he was willing to do so if she would reduce the rent to $1,200; that Perel then asked him if

he would pay her $1,500, and he said he could not pay that amount; that the last talk he had with Fambro he informed him that they had never been able to come to an agreement.

It developed in the evidence that Fambro raised anywhere from 75 to 90 bales of cotton on the farm in 1921.

Appellant contends that the court erred in reducing the rent for 1921 to $1,200; and appellee, Fambro, contends that the only error committed by the court was in forcing him to trial without giving him an opportunity to include in the record the statement of the sums he expended for repairs upon the farm.

After a careful reading of the evidence, we are convinced that the court erred in finding that appellant unconditionally agreed to reduce the 1921 rent to $1,200. The rental contract and note made pursuant thereto were in writing. The burden was upon Fambro to establish an unconditional agreement to reduce the rent. Appellee attempted to do this by the testimony of Mr. Cissna and himself. The testimony of Bob Gray does not corroborate them, and the testimony of W. S. Stephenson is rather against them. The conduct of Cissna in writing the paper for the landowners to sign, and of Fambro in circulating it, as late as August, is in conflict with their statement to the effect that appellant unconditionally agreed to reduce the 1921 rent in April or May of the same year. There is another very strong circumstance against them. Appellant's rent note was well secured, and there was no question about its collection. There is no evidence in the record to show that her land would have lain idle during the year, except a suggestion to that effect made by Fambro. The testimony of Fambro and Mr. Cissna was disputed by that of appellant and Mr. Perel. We do not think the appellee, Fambro, successfully met the burden upon him. The finding of the court on this point was contrary to the weight of the evidence.

We do not think the court abused its discretion in not granting Fambro a continuance of several days to get the statement from Mr. Cissna's books relative to advances for repairs. Mr. Cissna's deposition was taken eight days before the case was called for trial, and had Fambro been diligent he could have ascertained whether the statement had been sent to the stenographer and attached to the deposition before the case was called.

For the error indicated, the judgment will be reversed and judgment rendered here for the full amount of the rent notes with interest, less the amount of $35 and interest allowed by the trial court to Fambro for repairs.